**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0443n.06

Nos. 19-6478/6493

| | | |
|---|---|---|
| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | | **FILED**<br>Jul 30, 2020<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES COURT |
| | ) | FOR THE MIDDLE DISTRICT |
| SANTEZ BRADFORD, | ) | OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. In 2017, Santez Bradford pled guilty to multiple firearms and drug possession charges. A few months later, however, Bradford sought to withdraw his plea after concluding, based on his own research in the detention-facility law library, that some of the evidence against him could have been suppressed. The district court denied Bradford's request to withdraw his plea and sentenced him to 264 months' imprisonment. Now, Bradford asks us to permit him to withdraw his plea and vacate his sentence. We decline to do so and affirm.

I.

In 2017, Bradford pled guilty to four counts of possessing a firearm as a felon, two counts of possessing a stolen firearm, one count of stealing a firearm, and one count of possessing with intent to distribute cocaine. Included in the plea agreement was Bradford's admission to shooting at a group of people on Claiborne Street in Nashville. That shooting arose from an argument Bradford had with Kenneth Underwood, with whom Bradford's sister had a child. After the argument, Bradford acquired a pistol and, with two friends, sought out Kenneth. Instead, he found

Kenneth's sister, Quineshia Underwood, and a group of others on Claiborne Street. Bradford and one of his friends shot at the group repeatedly, fortunately hitting no one. Police found eight bullet casings at the scene.

In December 2017, Bradford, acting *pro se*, sought to withdraw his guilty plea. Bradford explained that he now believed the lawyer who advised him to plead guilty failed to explore the possibility of suppressing some of the evidence against him. Bradford also wrote that he was "really pleading to stuff [he] didn't do." 3:16-cr-00143 DE 89, Letter, Page ID 223. Bradford later clarified that, when he said "stuff [he] didn't do," he was referring to some of the relevant conduct he admitted to in his plea agreement, not any of the charges. The district court construed Bradford's letter as a motion to withdraw his plea, appointed Bradford new counsel, and scheduled a hearing on the motion. At the hearing, Bradford urged the court to adopt the more permissive standard for withdrawing a plea espoused by the Ninth Circuit in *United States v. McTiernan*, 546 F.3d 1160 (9th Cir. 2008). The district court concluded it could not follow *McTiernan* because Sixth Circuit precedent set a conflicting standard.

Applying Sixth Circuit precedent, the district court found that Bradford did not have a fair and just reason for withdrawing his plea. Fed. R. Crim. P. 11(d)(2)(B). In denying the motion, the district court emphasized that Bradford was aware of the possibility of filing a motion to suppress when he entered the guilty plea; delayed seeking to withdraw the plea; was not claiming innocence; had an adequate plea colloquy; and had prior experience in the criminal justice system which should have informed his decision to plead guilty instead of seeking to suppress the evidence against him.

The Presentence Report ("PSR") found that Bradford's offense level was 35 and his criminal history category was VI, producing a Guidelines-range sentence of 292 to 365 months'

2

imprisonment.  Relevant to this appeal, the PSR recommended a cross-reference with Guidelines section 2A2.1, which renders a defendant's offense level 33 if the object of the defendant's unlawful possession a firearm was attempted murder.  U.S.S.G. §§ 2K2.1(c)(1)(A), 2A2.1(a)(1).  The PSR applied a two-level enhancement for obstruction of justice and declined to recommend that Bradford's offense level be reduced for acceptance of responsibility.  Bradford objected both to the PSR's imposition of the attempted murder cross-reference and to the decision not to recommend the acceptance of responsibility reduction.

At the sentencing hearing, the government presented evidence supporting the attempted murder cross-reference, including testimony from witnesses to the shooting on Claiborne Street, testimony from another person who Bradford told about the shooting, and photographs from Claiborne Street after the shooting.  Quineshia testified that on the evening of December 22, 2014, she saw Bradford, who she recognized, and heard him identify her as Kenneth's sister to his friend before firing thirteen to fifteen shots at her from fifty feet away.  3:16-cr-00143 DE 156, Sentencing Tr., Page ID 652–55.  Underwood further testified that, while neither she nor others were hit by the bullets, she "could feel them coming past" and that she "felt like if [she] would have moved, [she] probably would have got hit."  *Id.* at 655.  Jeremiah Haynes testified that on December 22, 2014, Bradford asked him for a gun and told him that Kenneth "got to shooting at him."  *Id.* at 671–72.

Bradford argued that the attempted murder cross-reference should not apply because he lacked the intent to kill anyone but had instead just fired in the air to scare Underwood.  The district court disagreed and found that, after crediting Quineshia's and Haynes's testimony, the preponderance of the evidence supported the enhancement.  The district court also overruled Bradford's objection to the failure to apply an acceptance of responsibility reduction.  The district

court imposed a sentence of 264 months' imprisonment, a slight downward variance from the guidelines range. Bradford timely appealed.

## II

Bradford first seeks to withdraw his guilty plea.[1] As he did before the district court, he asks that we adopt an approach the Ninth Circuit has employed at least once for withdrawing a plea. The Ninth Circuit's approach in *United States v. McTiernan*, 546 F.3d 1160 (9th Cir. 2008), advocated by Bradford, conflicts with binding precedent in this circuit. *See United States v. Catchings*, 708 F.3d 710, 717–18 (6th Cir. 2013). Because the approach advocated by Bradford would conflict with published decisions of this court, we cannot adopt it. *United States v. Reid*, 888 F.3d 256, 258 (6th Cir. 2018). The district court accurately considered the factors identified in our precedent. Accordingly, we must affirm the district court's decision denying Bradford's motion to withdraw his guilty plea.

## III.

Bradford next challenges his sentence. He argues that the district court erred both by imposing a sentence enhancement for attempted murder and by failing to grant him a sentence reduction for acceptance of responsibility. We disagree and affirm Bradford's sentence.

## A.

Bradford first argues that the district court erred by imposing the cross-reference for attempted murder. "In the specific context of the cross-reference in § 2K2.1(c), we apply a deferential standard to the district court's 'fact-bound legal determinations.'" *United States v. Scheiblich*, 788 F. App'x 305, 308 (6th Cir. 2019) (quoting *United States v. Harris*, 552 F. App'x

---

[1] The government contends that the appellate waiver in Bradford's plea agreement precludes his challenge to his withdraw. Because binding precedent requires us to deny Bradford's challenge on the merits, we do not address that question. *See United States v. West*, 789 F. App'x 520, 523 (6th Cir. 2019); *United States v. Page*, 662 F. App'x 337, 339 (6th Cir. 2016); *United States v. Coleman*, 652 F. App'x 442, 445 (6th Cir. 2016).

432, 439 n.2 (6th Cir. 2014)). We "'accord due deference to the district court's determination that the firearm was [or was not] used or possessed in connection with' another offense." *Id.* (alteration in original) (quoting *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019)). *De novo* review remains for pure questions of law. *Id.*

The district court sentenced Bradford according to Guidelines section 2K2.1 for his unlawful firearms possession convictions. Section 2K2.1(c) instructs district courts to cross-reference § 2X1.1 when the defendant's unlawful possession of a firearm is in connection with an attempted commission of another offense. U.S.S.G. § 2K2.1(c)(1)(A). "When an attempt . . . is expressly covered by another offense guideline," § 2X1.1 instructs district courts to "apply that guideline section." *Id.* § 2X1.1(c)(1). Because § 2A2.1 expressly addresses attempted murder, we must apply it rather than § 2X1.1.

If the object of the unlawful possession of a firearm "would have constituted first degree murder," the defendant's base offense level is 33. *Id.* § 2A2.1(a)(1). The application notes explain that first degree murder for purposes of the cross-reference is defined as first degree murder in 18 U.S.C. § 1111. *Id.* § 2A2.1 app. n.1. "Murder is the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). First degree murder includes a killing "perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed." *Id.* Premeditated killing requires planning and deliberation, but "no precise amount of time" is needed to form the intent to kill. *United States v. Ely*, 750 F. App'x 411, 414 (6th Cir. 2018). To apply the attempted murder cross-reference, the district court must find that the defendant had specific intent to kill. *United States v. Morgan*, 687 F.3d 688, 697 (6th Cir. 2012).

Here, the district court did not clearly err in finding that the preponderance of the evidence suggested that Bradford's shooting at Claiborne Street was attempted murder. Premeditation is easily found. Haynes testified that Bradford came to him the evening of December 22, 2014, asking for a gun because Kenneth had shot at Bradford earlier in the day. And Quineshia testified that Bradford shot at her only after identifying her as Kenneth's sister. We have previously found premeditation where a defendant went to retrieve a gun before finding the potential victim and then pointing the gun at the victim and firing. *United States v. Frost*, 521 F. App'x 484, 492 (6th Cir. 2013).

Moreover, despite Bradford's insistence otherwise, the district court's conclusion that Bradford possessed an intent to kill was supported by the evidence. Quineshia testified that Bradford fired multiple rounds at her from around fifty feet and that she could feel the bullets fly past her. We have previously found that specific intent to kill could be inferred from a defendant firing a gun aimed at an individual. *See United States v. James*, 575 F. App'x 588, 596–97 (6th Cir. 2014). And we have cited approvingly another circuit's conclusion that specific intent to kill could be inferred from a defendant firing a gun at a group of individuals. *United States v. Rios*, 830 F.3d 403, 442 (6th Cir. 2016) (citing *United States v. Murillo*, 526 F. App'x 192, 195–96 (3d Cir. 2013)). The district court did not clearly err in finding the shooting constituted attempted murder.

Bradford's arguments to the contrary are unavailing. First, Bradford argues that "[t]he district court stopped short of making a factual finding that Bradford acted with a specific intent to kill." CA6 R. 13, Appellant Br., at 34. That is incorrect. The district court specifically found that Bradford "fired multiple shots at a group of people, specifically at Ms. Quineshia Underwood," and that "he did so deliberately, intentionally, with premeditation because of his

feelings towards Mr. [Kenneth] Underwood and the state of his mind at that time." 3:16-cr-00143 DE 156, Sentencing Tr., Page ID 698.

Second, Bradford contends that the district court's conclusion that he had specific intent to kill was erroneous because some evidence—specifically the bullet lodged in a second-story window and the fact that no one in the group was struck by a bullet—suggests he fired his weapon in the air intending only to scare Quineshia. But Bradford has offered only a competing view of the evidence; he has not demonstrated that his view of the evidence is the *only* view. Under clear error review, then, we must defer to the district court's view; that is particularly true given that the district court's conclusion is supported by the testimony of Quineshia and Haynes. *United States v. Wandahsega*, 924 F.3d 868, 888 (6th Cir. 2019).

Finally, Bradford insists we have not previously applied the cross-reference under similarly ambiguous circumstances. But Bradford's support is far from convincing. He cites to *Braxton v. United States*, 500 U.S. 344 (1991), where the Supreme Court reversed the district court's application of the attempted murder cross-reference because the district court relied only on stipulations, not testimony, and the defendant did not stipulate to specific intent. 500 U.S. at 351. *Braxton* is easily distinguishable because, here, the district court relied on the testimony of Quineshia and Haynes to support its conclusion that Bradford possessed specific intent to kill. Bradford's remaining support consists of less-than-compelling out-of-circuit or district court decisions.

The district court did not clearly err in imposing the attempted murder cross-reference.

B.

Bradford also argues that the district court erred by failing to grant him a sentence reduction for acceptance of responsibility. Because "[t]he sentencing judge is in a unique position to evaluate

7

a defendant's acceptance of responsibility" a district court's decision not to grant the acceptance of responsibility reduction "is entitled to great deference on review." U.S.S.G. § 3E1.1 app. n.5. Accordingly, we review the district court's factual determination that Bradford did not accept responsibility for clear error. *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). Bradford carries the burden of proving his entitlement to the reduction by a preponderance of the evidence. *Id.* (citing *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001)).

While a defendant's "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . constitute[s] significant evidence of acceptance of responsibility," "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 app. n.3. Conduct that is inconsistent with acceptance of responsibility can outweigh the evidence of acceptance of responsibility conferred by a guilty plea. *Id.*

We see no reason to disturb the district court's determination that Bradford did not accept responsibility. The district court offered three reasons for denying the reduction: Bradford attempted to withdraw his guilty plea, Bradford falsely denied relevant conduct related to the attempted murder cross-reference, and Bradford obstructed justice.[2] We have previously denied a defendant the acceptance of responsibility reduction for reasons similar to each of the reasons identified by the district court. *See United States v. Williams*, 940 F.2d 176, 183 (6th Cir. 1991) (reversing decision to grant reduction to a defendant who the district court found obstructed

---

[2] Bradford argues the district court improperly invoked his obstruction of justice enhancement as a basis for denying the reduction. Bradford relies on *United States v. Gregory*, 315 F.3d 637 (6th Cir. 2003), where we held that, although the defendant engaged in obstructive conduct, he was nevertheless entitled to the acceptance of responsibility reduction. *Id.* at 641. But Bradford omits that we granted Gregory the reduction in part because, unlike Bradford, Gregory "never denied his own responsibility and guilt" and "certainly never did something so extreme as to withdraw his plea." *Id.*

justice); *see also United States v. Conner*, 531 F. App'x 633, 635 (6th Cir. 2013) (affirming decision to deny reduction to a defendant who falsely denied relevant conduct relating to a sentence enhancement for discharging an unlawfully possessed firearm); *United States v. Wilder*, 161 F. App'x 545, 554 (6th Cir. 2006) (affirming decision to deny reduction where defendant filed a motion to withdraw his guilty plea). We can discern no clear error in the district court's determination and reliance on the stated reasons.

The district court did not clearly err in denying Bradford the acceptance of responsibility reduction.

IV.

Because the district court did not err in denying Bradford's motion to withdraw his guilty plea, imposing a sentence enhancement for attempted murder, and declining to grant a sentence reduction for acceptance of responsibility, we affirm the district court's judgment.